SANDERSON ROBERT *v.* NEW ENGLAND MUTUAL INSURANCE
COMPANY.

(No. 4,313.)

1. Contracts for life insurance are not contracts of idemnity, like those of
fire or marine insurance; they are agreements, on the part of the insurer,
to pay a prescribed sum—no more nor no less—if the person whose life is
insured shall die within the time for which the risk was taken.

2. The premium to be paid on life insurance is always paid, or secured to
be paid in advance.    If there is a failure to pay when, by the terms of the
policy, it is to be paid, the risk is at an end.

Sanderson Robert *v.* New England Mutual Insurance Co.

3. When, by the terms of the policy, a portion of the annual premium is to be paid in advance, and the residue in six months, and a note is taken for the deferred payment, a failure to pay the note at maturity defeats the policy; so that if, within the year, but after the note became due, and was unpaid, the life insured should terminate, no claim can be set up against the insurer. His liability no longer exists.

GENERAL TERM.—The defendants in error, a corporation by the law of Massachusetts, issued a life policy on the 22d of February, 1855, by which, in consideration of $90.40, paid to them by Geo. W. Sessions, of Painesville, Ohio, and for the like sum to be paid on the 22d of February, in each year, thereafter, during the continuance of the risk, they caused said Sessions to be insured for the term of seven years, upon his life, " for the benefit of" the plaintiff in error, " Sanderson Robert, for the benefit of himself, and for any firms of which he may be a member, to the amount of their then subsisting demands against the assured, as creditors; surplus, if any, for the benefit of the assured, his heirs and representatives." The sum insured was $8,000.

The policy, among other conditions, contained the following: 1. "In case the premium should not be paid to said company, at or before the time therein mentioned for the payment of the same, then, and in every such case, the said company shall not be liable for the payment of the sum insured or any part thereof; and the policy shall thereupon cease and be forfeited." 2. " The policy, and any sum that should become due thereon from said company for loss, or for distribution, or for return of premium, are pledged and hypothecated to said company, and they have a lien thereon, to secure the payment of any premium, or part thereof, on which credit may be given, and of any note or security given, or to be given, to said company therefor; and on non-payment of any such premium, or such note or security, or any part thereof, when due, all claim upon the policy shall be forfeited to said company, and the policy shall be void."

When the policy issued, Robert paid in cash one-half of the premium for the first year of the risk, and by an arrange-

ment with defendant, gave his note for the other moiety payable in six months, with interest. This note became due in August, 1855. In November following, Sessions, whose life had been insured, died; of which fact the agent of the company was duly notified, and payment of the sum insured thereon demanded. Payment was refused, on the ground that the moiety of the premium covering the risk for the half year, from August, 1855, to February, 1856, and which was represented by the note given by Robert, had not been paid at maturity. Robert offered to discharge it at that time; but the agent declined to receive it, on the ground that he had no power to do so.

The note was dated "Boston, February 22, 1855, payable to the New England Mutual Life Insurance Company, or their order, for $45.22, in six months, with interest, being in part of premium on policy No. 5237 of said company, on the life of George W. Sessions," and signed, as already stated, by Robert.

The company received the original proposition for insurance through their agent in Cincinnati, by whom the policy was afterward delivered to Robert. He also received the cash payment and the premium note, and had possession of the note when it became due.

The case was submitted to Judge Gholson, in special term. On the trial, it was claimed by the company that there was no subsisting insurance when Sessions, the person insured, died, the non-payment of the premium due in August, having, *ex vi termini*, put an end to the risk.

On the other hand, the plaintiff in error insisted—

1. The policy having been issued on receipt of a portion of the premium, by the underwriter, and a note taken for the residue, with interest payable at a future day, the condition that would otherwise have been precedent, was waived, and the remedy for the amount due was upon the note only, by way of action.

2. That the insurance was for seven years, and, therefore, an entire contract, and the policy, when once issued, conferred

a right that would not be defeated by the non-performance of a condition subsequent; failure, therefore, to comply strictly with the stipulations of the contract, would not destroy the claim of the assured ; for that equity might well relieve, as in other cases of technical forfeiture.

3. That was the duty of the company, or their agent, to notify the maker of the note when it became due, and as that information was not given, the party bound to pay was misled. If there was any neglect, therefore, on his part, it was caused by the prior omission of the underwriter, and can not now be set up to forfeit the policy.

After a full hearing, judgment was rendered for the defendant at the May term, A. D. 1857 ; the case is reported in vol. 1, p. 355, the judge holding that the risk was determined by the non-payment of the premium, in August, 1855, and if the default could have been waived, there was no evidence to sustain such an assumption.

Exceptions were taken to the ruling of the court, and the judgment at special term is now sought to be reversed, as well for the alleged error in deciding the case for the defendant, as for the refusal of the judge to grant a new trial on the motion of the plaintiff.

*Coffin & Mitchell, and Kebler & Force,* for plaintiff in error.

*Tilden, Rairden & Curwen,* for defendant in error.

STORER, J., delivered the opinion of the court.

The questions presented for our consideration, necessarily involve a thorough construction of the contract between the parties.

A contract of insurance is defined, generally, to be one of indemnity, whereby the assured is saved harmless from either a total or partial loss of the subject at risk. We may apply, very readily, the principle thus stated to a marine or fire policy, and hold both, as they really are, to

be such contracts; but it is not perceived on what ground life insurance has sometimes been placed in the same category.

In the first class of contracts, the amount to be recovered is measured by the extent of the injury sustained : it may reach the whole sum assured, or require only a partial payment from the underwriter; but, in the latter class, the loss must ever be a total one. The death of the person whose life is insured being the only event upon the happening of which a liability upon the policy can ever be created, there can not be a claim for a less sum than that taken upon his life, nor a right to discharge it, but by the tender of the whole amount at risk.

It was held, however, in *Godsall* v. *Boldero*, 9 East, 72, "that life insurance, as every other to which the law gives effect, is, in its nature, a contract of indemnity." This, it was said by Lord Ellenborough, was agreeable to the doctrine in *Hamilton* v. *Mendes*, 2 Burr. 1210, where Lord Mansfield remarked : "The plaintiff's demand is for an indemnity. His action, then, must be founded upon the nature of the damnification, as it really is at the time the action is brought."

We find no other reported English case to sustain the rule, and but one in the United States, 23 Conn. 244, *Bevin* v. *Mutual Life Insurance Company;* where Judge Ellsworth supposes such must be the construction, as it is applied without any hesitancy to fire and marine insurance.

But in the late case of *Dalby* v. *The India and London Life Assurance Co.*, 28 Eng. Law and Eq. 317, Baron Parke said : "The contract commonly called life assurance, when properly considered, is a mere contract to pay a certain sum of money on the death of a person, in consideration of the due payment of a certain annuity for his life, the amount of the annuity being calculated, in the first instance, according to the probable duration of the life; and when once fixed it is constant and invariable. The stipulated amount of annuity is to be uniformly paid on the one side, and the sum to be paid, in

the event of death, is always the same on the other. This species of assurance in no way resembles a contract of indemnity."

This decision expressly overruled the case of *Godsall* v. *Boldero*, which, it was held, was not sustained by the case of *Hamilton* v. *Mendes*.

We suppose, then, upon the reason of the rule, and the high authority of the last case, that we should not apply to the contract before us, the doctrine that an agreement to insure the life of a party is, necessarily, one of indemnity.

It follows that the policy issued by the defendant in error is an undertaking to pay a sum certain on the happening of a particular event, provided the insured, or those for whose benefit the risk was taken shall have performed the conditions required on their part.

By the terms of the contract, already stated, the payment of the premium must precede the liability of the insurers. It is made the condition upon which the risk is to depend, and, unless it has been complied with or waived by the defendants, it is clear the plaintiff can not recover.

Such is the construction given to a policy nearly identical with that before us, in *Want et al.* v. *Blunt et al.* 12 East, 183. See, also, *Acey* v. *Fernie*, 7 M. & W. 151; *Beadle* v. *Chenango Ins. Co.*, 3 Hill, 161.

It can not be doubted but the parties to the contract had the right to settle its terms, and affix any condition they saw proper, if not inconsistent with law; and they might well determine the mode in which, and the time when these conditions should be performed. When the agreement is once made and its terms clearly defined, the duty of the courts is plain. Whatever the arrangements between the parties are, they must be carried out according to their intention. 5 Ohio, 381, *Reed* v. *McGrew;* 13 Ohio, 82, *Easton* v. *Penn. and Ohio Canal Co.*

On this principle, the assured has been denied his claim to recover, if he has failed to notify the underwriter of any prior or subsequent insurance on the subject at risk, or has not caused it to be indorsed on the policy; and this, too,

when there is proof, by parol, that the agents of the insurers knew of the existence of the fact, and assented to the additional insurance, as in 16 Peters, 512, *Carpenter v. Providence Wash. Ins. Co.*; 21 Conn. 31–37, *Glendale Co. v. Protection Ins. Co.*; 9 Cushing, 473, *Forbes v. Agawam Mutual Fire Co.*; 11 Cushing, 265, *Worcester Bank v. Hartford Fire Ins. Co.*; 18 Ohio, 116, *Harris v. Columbiana Co. Ins. Co.*; and thus it is that a warranty, inserted in the policy, is in the nature of a condition precedent, and it is, as is well said by Ellis, in his work on " Fire and Life Insurance," p. 29, " quite immaterial for what purpose, or with what view it is made; but, being once inserted in the policy, it becomes a binding condition on the insured, and, unless he can show that it has been strictly fulfilled, he can derive no benefit from the policy ;" and the rule is the same whether the condition be material to the risk or not, and whether the noncompliance be with or without the act or privity of the insured. Phillips on Insurance, sec. 866.

But, it is said by counsel that a fair construction of the policy will authorize the assumption that the underwriters were satisfied with the note given for a moiety of the premium, as a substitute for the cash agreed to be paid by the rules of the company ; and, therefore, the remedy exists only upon the note, the condition being waived by its reception, that required payment in advance.

The premium, it will be remarked by the agreement of parties, was divided, a moiety being advanced in cash, and on the residue a credit of six months given. The note was but the result of the arrangement. It did not, we think, impose any new duty upon the assurer or the assured ; both must have understood the purpose for which it was given. It furnished evidence, we suppose, of the credit allowed, and the sum agreed to be paid. It could not, certainly be a waiver of the condition contained in the policy, as both parties were fully advised of their requirements; but it must be regarded as placing the parties in no other situation than they would have been had no note been taken. In

that event, the semi-annual payment must have been made on the day it became due, for such was the contract; and the note, we think, was but the evidence of its terms.

We must hold, then, that, by taking the note for a portion of the premium, the rights and duties of the underwriter and the insured were unchanged; they are to be determined upon the same principle that would apply when a parol agreement alone existed. Nor can the admission in the policy that the premium was paid, preclude the inquiry into the real state of facts. Such a statement is clearly, *prima facie,* sufficient to cast the burden of disproving it upon the defendant, but like any other admission of the receipt of money, whether by parol or writing, or deed, it may be explained, and, if necessary, controverted. There is no distinction, in this respect, between a contract of insurance and a conveyance of land; the payment of premium or of the purchase money, are alike the subjects of denial, however clear may have been the acknowledgment of either by the contract. In such cases there is no estoppel. 2 Ohio, 271, *Slaughter* v. *Hamm;* 16 Wendell, 460, *McCrea* v. *Purmort.* We are met at this point with the case of *New York Cent. Ins. Co.* v. *National Pro. Ins. Co.,* 20 Barb. 475, where Mason, Judge, says: " This policy was issued and delivered to the plaintiffs, and the premium is acknowledged in the policy as actually received. This, upon the authorities, seems to be held as conclusive, and to bind the insurer." But the authorities he quotes as to the existence of the rule, in England, are not satisfactory. In the United States, we find no adjudicated case to sustain him; but, on the contrary, the doctrine, whenever referred to, is universally affirmed. Phillips on Insurance, sec. 505; 1 Green Ev. sec. 26, where the cases are cited. It is further argued that there are equitable circumstances in the case which will authorize the court, under the plenary powers given in our code of practice, to give relief on the ground of accident and mistake. We have no doubt of our jurisdiction in a proper case, but the facts upon which the plaintiff relies, in our opinion, do not

constitute any sufficient reason for our interference to save a forfeiture, if one has been created, or to change the terms of a contract, that are neither obscure or ambiguous.

When the premium note became due, it is admitted the agent of the defendant held it for collection, and it is claimed no notice of the fact was given to the maker, in consequence of which he was thrown off his guard and did not meet the payment. In this connection it is also admitted that all notes, given in the course of business, whether payable at a bank or not, are usually deposited there for collection; but it was not so done by the agent, and as the maker, it is asserted, would have paid it, had it taken the ordinary course, he ought not to suffer by the alleged neglect of the assurers.

The note was dated in Boston, and was payable there, though, at the time it was due, it was in the hands of the agent in Cincinnati.

We suppose there is no legal duty imposed upon the holder of a note or an accepted bill, where no third parties are sought to be made liable, to notify the maker, or acceptor of the day of payment, or to demand payment when it is due.

The obligation is perfect, on the part of the maker, to discharge his contract, and it is his duty to tender payment when the credit expires. Every merchant is supposed to keep a record of his bills payable, to which he may daily refer to ascertain his accruing liabilities; and he can not we think, excuse his own neglect, by requiring the creditor to demand what he is bound, at all events, to pay.

Although the note was payable in Boston, it does not appear that any effort was made to discharge it there. It is admitted none was made here, until after the time of payment had expired, and the party whose life was insured had died.

But, it is further urged, that we can save a forfeiture upon equitable principles, and it is but just that we should interfere, and, by decreeing the premium note to be paid,

place the parties in the same condition they were in when the loss occurred.

A forfeiture may always be saved when compensation can be given for the non-performance of a condition, provided a condition is not precedent to the existence of the right to be enforced.

It is true such conditions will be regarded as covenants, in all cases, where the parties have not otherwise clearly intended, and their agreements are made dependent upon a prior duty to be performed, or an act omitted. Whenever an estate is to vest, or a personal right to accrue, upon the happening of a condition agreed upon, and clearly under-stood by the parties, there must be fulfillment of the condition before any claim can exist.

The rule as to conditions subsequent is manifestly differ-ent. In such cases, forfeitures are always saved, for the reason that when a right has once vested, it will not be taken away, but the relief will be measured in damages.

There may be, and the modern authorities justify the re-mark, cases where even the precedent condition may be regarded as a covenant, and relief awarded by compensation in money; but when the parties can not be placed upon equal terms, and the damages, on the one part, made equiv-alent to the enjoyment of a benefit on the other, the estab-lished rule must be adhered to.

Here, the application of the rule would be to permit the insured to create a new contract, and that, too, after the death of the person whose life was at risk; and, as the pre-mium was not tendered until after the loss had occurred, there was no life at risk, and, therefore, subject of insu-rance.

Nor do we understand the liabilities of the parties were changed by the taking of Robert's note, instead of that of the party whose life was insured. There would be no ground for refusing to apply the terms of the contract if the note of a third person had been taken; but when the maker as in the case of Robert, was primarily interested in the insurance,.

the amount at risk being payable to him, there can be no difference, we suppose, in the result.

Life insurances, especially when made in mutual companies, depend in no small degree, for their security, as well as the promptness of the insurers to pay, in case of loss, upon the receipt of premiums in advance by the underwriter. His ability to pay is strengthened, if it does not mainly rest upon the accumulation of these premiums into a common fund, for the mutual benefit of those interested in the profits, as well as the safety and certainty of the risk to those for whose use it has been taken.

It is not merely a question of interest, but one of absolute duty, in fact, of self-preservation, when a life insurance company issues a policy, and requires the premium agreed upon to be punctually paid; and it is, therefore, just, where a condition is found in the policy that a failure to pay shall avoid it, that the insurers shall have the benefit of the stipulation thus made to protect themselves, and fully assented to by the insured when he received the policy.

Whenever, then, it is clear that the parties understand the contract to impose the duty of prompt payment, and require it as a condition before any right can vest, we have no other course to pursue but to hold them to their agreement.

The principle upon which courts should act, in similar cases, has been already stated; but it is very fully and forcibly set forth by Sir William Grant, in 13 Ves. 428, *Sparks* v. *The Liverpool Water Works Co.*, and we adopt the reasoning and the law of that case to its fullest extent.

We have been reminded that the acts of the defendant subsequent to the time the note became due, were a waiver of the condition; but we find no evidence to sustain such a claim.

We do not understand that a policy, forfeited or avoided for the non-performance of a condition precedent, can be set up on any such principle.

In all the cases where the subsequent acts of the under-

writer have been held to dispense with a prior condition, the liability is said to be created upon the new agreement— not as continuing upon the former contract : as in *Wing* v. *Harvey*, 27 E. L. and Eq. 144; 18 Barb. 541, *Buckbee* v. *U. S. Ins. An. & T. Co.*, but the doctrine affirmed in these cases can not apply, for the reason already alluded to, the loss having occurred before the acts upon which the waiver is claimed transpired.

On a very careful examination of the case, aided, as we have been, by the very thorough arguments of all the counsel, we have, after much deliberation, arrived at the conclusion that the clauses in the policy requiring the payment of premium in cash, as well as all notes given for any portion of it, are precedent conditions that must have been literally complied with by the insured, before any liability could exist against the insurer ; that the moiety of the premium due on the 22d day of August, 1855, was not then paid, nor was it tendered until after the death of Sessions, whose life was insured, and the policy, therefore, ceased to be of any value from the period the credit expired; that there has been no waiver of the condition by the underwriter, nor have we any equitable power to grant relief, on any supposed ground that we might, in a proper case, save a forfeiture.

On the whole case we must affirm the judgment.

Judgment affirmed.