## Case No. 3,642.

### DAVIS v. MASSACHUSETTS MUT. LIFE INS. CO.

[13 Blatchf. 462;[2] 5 Ins. Law J. 736.]

Circuit Court, D. Vermont. July 25, 1876.

LIFE INSURANCE — POWER OF AGENT TO WAIVE CONDITIONS—PAYMENT OF PREMIUMS.

1. A policy of life insurance by a company, on the life of S., declared that it was issued and accepted upon the express conditions, that it "shall not take effect until the advance premium hereon shall have been paid during the lifetime of the person whose life is hereby insured; that no premium, or instalment of premium, hereon, shall be considered as paid, unless a receipt shall have been given therefor at the time of payment, duly signed by the president or secretary of said company; that no agent of the company shall make any contract binding the company, nor alter or change any condition of the

[1] [Reported by Hon. William Cranch, Chief Judge.]
[2] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

policy, nor waive forfeiture of this policy." The policy was put into the hands of S., by an agent of the company, who informed S., at the time, that there was no hurry about his paying the premium. Thereafter S. died, still retaining the policy, but without having paid the premium, and without any receipt for the premium having been given to him: *Held*, it is to be inferred, from the fact that S. retained the policy, without objection, that he accepted its terms and provisions.

2. The premium was not paid, as between S. and the company.

3. The agent attempted to give a credit to S. for the amount of the premium, in violation of the conditions of the policy.

4. The attempted waiver by the agent was not effectual, and the policy never took effect.

[This was an action at law on a policy of life insurance by L. L. Davis, administrator of Jerry B. Sweatland, against the Massachusetts Mutual Life Insurance Company.]

E. Henry Powell, for plaintiff.
Guy C. Noble, for defendants.

SHIPMAN, District Judge. This case was tried by the court, upon the following agreed statement of facts, a jury having been waived by the written stipulation of the parties: "The plaintiff's intestate, Jerry B. Sweatland, resided in Richford, in this district, and was the keeper of a hotel. The defendants are a corporation created by the laws of the state of Massachusetts, with headquarters at Springfield, in that state. [The defendants' charter may be referred to so far as necessary, and considered a part of this case. The application of the said Sweatland, bearing his signature, and the premium receipt and policy made and signed by the defendants, and in question in this suit, are hereby referred to and made a part of this case.][3] On the 1st of August, 1873, and for two years before, one M. V. B. Edgerly, of Manchester, N. H., was the general agent of defendants for a portion of New England, including the state of Vermont. For the same time, one Charles Parkhurst was special state agent for Vermont, for the purpose of soliciting applications for insurance in said company, delivering policies and collecting premiums thereon, appointed by said Edgerly, with headquarters at Burlington, Vermont. About April 1st, 1872, Parkhurst employed one H. M. Buxton to solicit applications for insurance, and it was also Buxton's duty, under such employment, to collect premiums on policies that were place in his hands, and thereupon to deliver premium receipts and such policies to the assured. Said Buxton made monthly remittances of all such premiums so collected to Parkhurst, keeping an account of all such applications, policies delivered and not delivered, payments, &c., in a book, which account was the only one kept by Buxton with the company, or in the insurance business. Parkhurst's compensation, as agent, was a

[3] [From 5 Ins. Law J. 736.]

certain commission reserved out of all said premiums. He employed Buxton as sub-agent, and paid him an annual salary for his services. The above comprised all the duty and authority of said Buxton under such employment. All his communications about the defendants' business were with Parkhurst. Parkhurst was under bond to the defendants. Buxton was not under bonds to Parkhurst or the defendants. Neither Edgerly nor Parkhurst had any authority to grant insurance, and all the authority Buxton had was derived from said employment by Parkhurst. Buxton's headquarters were at St. Albans, Vermont, and he was at the time subject to the orders of Parkhurst, but his work was done mainly in Franklin, Grand Isle, and Lamoille counties. Richford is 28 miles from St. Albans, and Buxton was in the habit of going there once each month, and, while there, stopping sometimes at Sweatland's hotel, and sometimes at another hotel in the place. On June 4th, 1873, Sweatland executed and delivered to Buxton an application for insurance, signed by him. Buxton sent the same to Parkhurst, the latter transmitted it to Edgerly, and the latter to the defendants, at Springfield. The same was accepted by the defendants, and, on the 13th day of June, 1873, they made out and signed a premium receipt and policy. They sent the same to Edgerly, general agent, at Manchester, who received and stamped the same June 16th. 1873, and forwarded the said premium receipt and policy to Parkhurst, at Burlington. About the last of June, 1873, Parkhurst sent the same to Buxton, at St. Albans. On the 1st of July, 1873, Buxton wrote a letter to Sweatland, of which the following is a copy: 'St. Albans, Vt., July 1st, 1873. Jerry B. Sweatland, Esq., Dear Sir: Enclosed find your policy. You can send the amount due by C. M. Searle, if you wish, and I will return you receipt for the same, or you can pay it to me when I am up next time, as you please; no hurry about it. Yours, very truly, H. M. Buxton.'—and sent the policy, with the letter, by the hand of C. M. Searle, therein named, to Sweatland. Searle was a mail agent running between Richford and St. Albans, daily. Said policy and letter were received by Sweatland on or about said 1st of July, and they were found among his papers after his decease, and, after said letter, no communication of any kind was had between Sweatland and Buxton, or Sweatland and the defendants, in respect to the policy or anything else. The premium provided for in the policy was never tendered or paid by Sweatland, or by any one on his behalf, to Buxton, or the defendants, or any one in their behalf, before Sweatland's decease. Said premium receipt was never delivered to Sweatland or asked for by him, but remained in Buxton's hands after his receipt of the same from Parkhurst, until one or two days after Sweatland's decease,

when Buxton returned it to Parkhurst. Said Sweatland was, at the time he received said policy, in perfect health, and so continued until the 15th of July, 1873, when he died in an apoplectic fit. No question is made but that all the requirements of the policy as to notice of death, and all other matters, subsequent to the decease of said Sweatland, have been complied with. The plaintiff offers to show by E. H. Powell, his attorney, and, if competent or admissible against defendants' objection, it may be taken as proved, that, a few days after the decease of Sweatland, the said Buxton told him, said Powell, that he thought the company would make no question about the claim, and that it was not necessary to make any tender of the premium which the said Powell then had and proposed to pay, and otherwise would have tendered to said Buxton, as agent for defendants." The application of Sweatland, a copy of which was partly written and partly printed upon the back of the policy, contained the following agreement: "And it is hereby further agreed, that, under no circumstances, shall the policy be in force until the first premium, as stated in the policy, shall have been paid, during the lifetime of the said party whose life is hereby proposed for insurance, to the company, or to an agent duly authorized by the company to receive payments of premiums, and that no premium, or instalment of premium, shall be considered as paid, unless a receipt shall have been given therefor, at the time of payment, duly signed by the secretary or president of the said company." By the policy, the defendants, "in consideration of the declarations and statements made in the application for this policy, and of the annual premium of $32.80, to be paid on or before the 13th day of June, at noon, in each and every year, during the continuance of the policy, do insure the life of Jerry B. Sweatland, * * * in the amount of one thousand dollars, for the term of life;" and the company promised to pay the sum insured to the said Jerry B. Sweatland, his executors, administrators, or assigns, "said sum insured being for the express benefit of Mary B. Sweatland, wife of the said Jerry B. Sweatland." The policy was "issued and accepted upon the following express conditions: * * * Second. That this policy shall not take effect until the advance premium hereon shall have been paid during the lifetime of the person whose life is hereby insured. * * * Third. That no premium or instalment of premium hereon shall be considered as paid, unless a receipt shall have been given therefor at the time of payment, duly signed by the president or secretary of said company. * * * Eleventh. That no agent of the company shall make any contract binding the company, nor alter or change any condition of this policy, nor waive forfeiture of this policy." The book of Buxton contained a list of the poli-

cies which he had received, with the numbers, names of the insured, and other important memoranda in relation to each policy, arranged in tabular divisions or columns. Under the head of "Premiums Received," and "When Received," opposite the name of Jerry B. Sweatland, were blanks, and the words "died July 15, 1873," were written against his name.

In order to determine the principles of law which are applicable to this case, it is necessary for this court to find the inferences of fact which are properly deducible from the agreed statement of facts.

(1.) From the retention of the policy, without objection, by Sweatland, for fifteen days, under the circumstances which have been detailed, the court is authorized to infer an acceptance of its terms and provisions.

(2.) Was payment of the premium actually made, as between the insured and the company? If Buxton had undertaken, either expressly or impliedly, to pay the premium to the company, and to make Sweatland his own debtor therefor, the transaction would have been equivalent to payment. Cases of this kind are not infrequent. But there is an entire absence of evidence that there was any such express or implied agreement or understanding between them. On the other hand, the letter of Buxton furnishes evidence that the premium was not paid, as between the insured and the company. The agent says, "You can send the amount due, and I will return you receipt for the same" —showing that no receipt was to be given, and indicating that no payment was to be considered as made, until the money was actually received. Buxton's book-keeping confirms this view. The question is answered in the negative.

(3.) Did Buxton attempt to alter the condition of the policy, requiring a prepayment of the advance premium before the policy should take effect, and to give a credit to Sweatland for the amount? If the provisions of the policy are agreed to and accepted by the insured, "where the policy is delivered without requiring payment, the presumption is, especially if it is a stock company, that a credit was intended." Miller v. Life Ins. Co., 12 Wall. [79 U. S.] 303. This is not a conclusive presumption, but the question whether credit was intended is one of fact, and there is not an unyielding rule of law implying such a result from the mere fact of the delivery of an executed contract. Waiver is the act of the company, acting through its duly authorized agents. The intention of the only person who acted in this matter is to be gathered solely from his letter, in which he says, "You can send me the amount due by C. M. Searle, if you wish, and I will return you receipt for the same, or you can pay it to me when I am up next time, as you please. No hurry about it." If he had not added the last clause, the letter might have been construed to mean—

"You can examine the policy and send me the money, and I will return you receipt," it being well understood that the policy does not take effect until the premium is paid; but, when the writer says, there is "no hurry about it," it indicates that he intended that the policy should be subsisting; otherwise, there was need of promptness, as the event proved. If it was desirable to the insured that the policy should take effect, it was also desirable that he should take the proper steps to make it effectual. Although Buxton knew of the express provisions of the policy, he probably relied upon the continuance of the life of a man who was apparently in good health, and, in the expectation that payment would be made in the future, he took the unauthorized liberty of disregarding the terms of the contract. I am, therefore, of opinion, that the presumption which is to be inferred from delivery has not been overcome by the defendants.

It having been thus found, as matter of fact, that there was an attempted waiver by Buxton, the question of law arises—was the attempted waiver effectual? It is not necessary, under the provisions of this application and policy, to consider any distinction between the powers of a general agent, by which term I mean an agent who is authorized to make contracts of life insurance, and the powers of a sub-agent, who is employed "to solicit applications for insurance, and, under such employment, to collect premiums on policies that are placed in his hands, and thereupon to deliver premium receipts and such policies to the assured," and whose powers are coextensive with the business intrusted to his care, because, in my opinion, the powers of any person who was an agent, and not an officer, of the company, to vary the terms of the contract which had been entered into between the company and Sweatland, had been taken away, and the prohibition of the exercise of such powers was known to Sweatland. The provisions alike of the application and of the policy declare that the policy will not take effect, unless prepayment has been made. This condition could have been waived by the company, or its duly authorized agent, unless the agent had been prohibited from varying the terms of the policy, and that restriction of his powers had been brought home to the knowledge of the insured. In this case, the contract, which the insured had in his possession, bore upon its face the restriction of the powers of any agent, as to the alteration of the provisions of the policy. Sweatland had expressly agreed, in his application, that under no circumstances should the policy be in force until the first premium had been paid during his lifetime. This agreement was embodied in the policy to which he had also assented, and which informed him that an agent could not vary or alter one of its conditions. In the absence of fraud or imposition, it is conclusively

DAVIS (Case No. 3,643)                    [7 Fed. Cas. page 144]

presumed that a party to a written contract which has been received and accepted by him, knew of its terms. Rice v. Dwight Manuf'g Co., 2 Cush. 80; Grace v. Adams, 100 Mass. 505; Hopkins v. Westcott [Case No 6,692]. In this case, under the express provisions of the contract, credit must be given, or be sanctioned, by the company, acting through its board of directors, or those executive officers who represented the company in this policy. Unless so made or sanctioned, the attempted waiver is ineffectual. The company would have had the power, notwithstanding the terms of the policy, to invest its agent with authority to waive its provisions, but no attempt has been made to show that the company ever sanctioned the act of Buxton. Union Mut. Life Ins. Co. v. McMillen [24 Ohio St. 67]. There being no evidence of such sanction, Sweatland knew that he had not paid the premium, that Buxton had no authority to waive prepayment, and that the policy had not become effectual. The decision of this point renders it unnecessary to determine whether the suit was properly brought in the name of the administrator. Let judgment be rendered for the defendants.