BROWN, *Adm'r, v.* THE MASS. M. L. INS. CO.

A motion for a nonsuit, not made until the evidence is closed on both sides, and not objected to by the plaintiff on that ground, will be regarded as seasonably made.

By signing an application for and accepting a policy of life insurance, a party must be held to have had notice of and to have agreed to the terms and conditions contained in the application and the policy.

A party accepting a receipt for money paid, which he knew he had not paid, cannot set it up as an estoppel against the party giving it.

In the absence of any express authority or ratification by the company, an insurance agent has no authority to waive payment of any part of the premium.

Where, by the terms of a policy of life insurance, it is provided that no agent shall make any contract binding the company, or alter or change any condition of the policy, an agent cannot bind the company by accepting less than the whole of a premium in payment of it, against an express stipulation in the policy that the advance premium should be paid during the lifetime of the assured.

A principal cannot be held responsible for acts of his agent, beyond the apparent scope of his authority, which he has never ratified, and of which he has never had any actual knowledge.

A business arrangement between the company and its agents, by which it charged the advance premiums to them when it issued the policies, is not a payment of the premiums, in the absence of any understanding between the agents and the assured that it should be considered as a payment.

A premium note is not delivered, so as to bind the company, while it is held in the hands of a third party, to whom the assured gave it to carry to the agent.

ASSUMPSIT, on a policy of life insurance, No. 36,232, dated December 31, 1874, for $1,000, on the life of R. B., which was delivered to the plaintiff as the agent of his son, R. B., by Hodgdon, an agent of the defendants. The receipt for the first premium, of cash $61.20, plus loan note for $30 = $91.20, was also delivered with the policy.

The plaintiff offered in evidence another policy, No. 32,036, dated September 10, 1872, from the defendants to R. B., the delivery of which was proved; and also the delivery of another similar one, of the same date, from the defendants to the plaintiff's son, N. B. The annual premium payable on No. 32,036, by its terms, was cash $29.12, plus semi-annual payment $29.12, plus loan note

$28 = $86.24. The plaintiff testified,—"I had dealings with Butler. He wanted to insure my two sons in this company, and I made an agreement with him, in 1872, to insure them for $50 every six months, and the loan notes. I paid him $50, and received from him this policy, No. 32,036. After that I received a notice, and also this letter from Merrill, dated April 12, 1873. I went to Hodgdon, and told him I had been wronged by Butler. He said he knew all about that. I told him I wanted my money back, but would be satisfied with $25. He said they didn't pay any money back, but if I would take new policies for the boys, the first six months premium I had paid Butler should pay the first six months premium on new one, but after six months I should pay more than $50. I agreed to it December 25, 1874. The boys were to be examined again. R. B. died March 15, 1875."

Merrill, the general agent of the defendants in Portland, by letter to the plaintiff, acknowledged the receipt of his letter of April 10, stated the amount of premiums to be paid on the policies of 1872, and said he would investigate the matter, and if Butler had misrepresented matters, would discharge him at once.

Hodgdon testified (in a deposition introduced by the defendants) that in December, 1874, the plaintiff told him that his two boys were insured in this company; that the transaction was not satisfactory, and he wanted to get out and get his money back. "I told him that at that date those policies had no value, but if he would take new policies on his sons I would allow him something out of the first year's commissions towards paying the first premiums on the new policies. * * * The agreement was, that they were to pay me the cash premiums on these policies, less $50, at the time of their next settlement at Mr. Sawyer's, where they worked. I told them that this $50 would amount to more than my first commissions, but that I would arrange this through Edgerly, the general agent of the company."

A witness, called by the plaintiff, testified,—"I had some knowledge of Hodgdon's way of doing his insurance business as agent of this company. When he insured me, he gave me credit and made deductions; he gave me credit for as long a time as I needed it; he deducted his commissions, and gave me policy and receipt for premium. He also gave credit to my brother. I paid the premium for him, sixty to ninety days after date of policy. I also heard conversation between Hodgdon and Mallon of Exeter. Hodgdon offered to give him what time he wanted, to induce him to insure. He made the same offer to Towle of Exeter. He frequently requested me to help him get people to be insured, and said he would give credit if necessary."

The application signed by R. B., written by Hodgdon, and dated December 25, 1874, contained the following stipulations:

"And it is hereby covenanted and agreed that * * * if any violation of any covenant, condition, or restriction of the said pol-

icy shall occur on the part of the party or parties signing this application, then the said policy shall be null and void.  *  *  *

"That the officers of the said company, at the home office of the said company, in Springfield, Mass., alone shall have authority to determine whether or not a policy of insurance shall be issued on this or any application, or whether or not any insurance shall take effect under this or any application.  *  *  *

"And it is hereby further agreed, that under no circumstances shall the policy be in force until the first premium, as stated in this policy, shall have been paid, during the lifetime of the said party whose life is hereby proposed for insurance, to the company, or to an agent duly authorized by the company to receive payments of premiums; and that no premium or instalment of premium shall be considered as paid unless a receipt shall have been given therefor, at the time of payment, duly signed by the secretary or president of the said company."

The policy contained the following: "This policy is issued and accepted upon the following express conditions  *  *  *: This policy shall not take effect until the advance premium hereon shall have been paid during the lifetime of the person whose life is hereby insured. No premium or instalment of premium hereon shall be considered as paid unless a receipt shall have been given therefor at the time of payment, duly signed by the president or secretary of the said company  *  *  *. No agent of the company shall make any contract binding the company, nor alter or change any condition of this policy, nor waive forfeiture of this policy."

At the time of the agreement made by the plaintiff and Hodgdon, in December, 1874, the policies of 1872, which the plaintiff had obtained from Butler, if ever valid, had lapsed, and were of no value. No money was ever paid to the defendants or any of their agents, by the plaintiff or his sons, except the sum paid to Butler. The loan note of $30, which the policy in suit required to be given, was never given to the defendants, nor tendered during the life of R. B. The plaintiff testified that Hodgdon gave it to him, and told him to get R. B. to sign it, and to bring it up any time; that he carried it home, where R. B. signed it; and that the plaintiff carried it after R. B.'s death to Hodgdon, who refused to take it.

On cross-examination, M. V. B. Edgerly, the general agent of the defendants in New Hampshire, testified,—"I made the settlements of the company with Hodgdon. The usage was to send policy, and receipt for advance premium ($91.20 in this case), to him, and charge the premium to him. He sent me every month his account, and the balance in his hands after deducting his commissions and compensation. When a policy was returned, he would be credited with the premium that had been charged to him. Sometimes he was short. I must have received this policy

(No. 36,232) and receipt from him, and sent it to the company, before March 31, 1875. There were no allowances or deductions made to him, to my knowledge, for premiums not paid by the insured."

The defendants moved for a nonsuit, which was denied, and the defendants excepted. Verdict for the plaintiff.

*Jeremiah Smith* and *Wheeler*, for the defendants.

A nonsuit should have been ordered. The advance premium was not paid during the lifetime of the alleged insured. That premium was payable partly in cash and partly by note. Neither part was paid. The cash portion of the premium was not paid in full. The note was never delivered or tendered to the company, or their agent, during the lifetime of the alleged insured. The cash part of the premium was $61.20. There is no pretence that the plaintiff paid more than $50 towards the amount. The only semblance of payment alleged by the plaintiff consists in his relinquishment of a claim against the company to recover back $50 which he had paid on a former policy. But $50 does not pay in full a premium of $61.20. It falls short $11.20. And, even if interest (which the plaintiff never claimed) is allowed on the $50 from the date of the former policy (September 10, 1872) to the date of the policy in dispute (December 31, 1874), the entire amount is only $56.92, still leaving $4.28 of the cash portion of the premium unpaid. The plaintiff does not testify to an agreement with Hodgdon that Hodgdon should pay the balance of the cash premium to the company, and make the plaintiff his debtor for that amount. If that agreement had been made between the plaintiff and Hodgdon, we submit that it would not avail the plaintiff unless carried out by Hodgdon, but would be the mere personal agreement of Hodgdon in his private capacity, for the performance of which the company were not responsible. *Buffum* v. *Fayette M. F. I. Co.*, 3 Allen 360; *Hoyt* v. *Mutual Benefit L. I. Co.*, 98 Mass. 539, 544. But no such agreement was made. On the contrary, the plaintiff's testimony is explicit that it was agreed that the first six months premium he had paid Butler, which was $50, "should pay the first six months premium on new one."

But if the sum of $61.20 had been paid, this could not avail the plaintiff, because the alleged insured did not complete the payment of the premium. The delivery of this note to the company or their agent, in the lifetime of the alleged insured, was just as requisite to the effecting of a contract as the delivery of the cash part of the premium. The failure to deliver the note was enough of itself to prevent the completion of the proposed contract of insurance. *Lewis* v. *Phœnix M. L. I. Co.*, 44 Conn. 72. It is admitted that the note was never delivered, nor tendered, during the lifetime of the alleged insured. The fact that it was signed by him is utterly

immaterial. Delivery was essential to make the paper a valid note, and until delivery the signer was "under no obligation whatever" by reason of his signature. 1 Pars. Notes and Bills (1st ed.) 48.

The company were not estopped from showing non-payment of premium. A receipt is but an admission, and may be contradicted. *Baker* v. *Union M. L. I. Co.*, 43 N. Y. 283; *Sheldon* v. *Atlantic Co.*, 26 N. Y. 460. "There can be no estoppel in behalf of one having full knowledge of all the facts." Brown knew that he had not completed the payment of the premium, and consequently could not have been misled by the receipt. The usage of the company to charge the premium to the agent at the time of sending the policy cannot operate as a payment of the premium by the applicant for insurance, nor as an admission of the completion of the contract. It was a mere private arrangement (of a temporary and provisional nature) between the company and the agent, for the purpose of securing the due payment to the company of all moneys which might thereafter be received by the agent. It could, at the utmost, have only the effect of imposing a conditional penalty on the agent. Third persons could not take advantage of it. *Acey* v. *Fernie*, 7 Mee. & W. 151. This charge on the company's books was never known to Brown, or relied upon by him.

The plaintiff is understood to claim that the agent, Hodgdon, waived or varied the terms and conditions of contract announced by the company. To this position there are two answers:—

1. The alleged arrangement as to the cash part of the premium was not within the apparent power of the agent, even supposing the policy to have contained no limitation of his authority. *Hoffman* v. *Ins. Co.*, 92 U. S. 161.

2. Even if the alleged agreement with the agent had been simply for delay, it could not have bound the company. Whatever apparent authority the agent might otherwise have had to make such an agreement was completely taken away by the restriction which the policy made known to the other party. The policy itself gave notice to the applicant that no agent could "make any contract binding the company, nor alter or change any condition of this policy, nor waive forfeiture of this policy." The power of the agent to vary the terms of the contract had been taken away, and the prohibition of the agent's exercise of such a power was made known to the alleged insured. When Brown received the policy, he received notice that it did not constitute a contract of insurance. He knew that he had not paid the premium; he knew that Hodgdon "had no authority to waive prepayment;" and hence he knew that "the policy had not become effectual." There is no doubt of the power of a company to limit the authority of its agent, and there can be no doubt of the effect of such a limitation when notice of it is given to the other party. The following cases sustain the defendants on this point: *Davis* v. *Mass. Mutual L. I. Co.*, 13

Blatchf. 462; *Franklin L. I. Co.* v. *Sefton*, 53 Ind. 380—*S. C.*, 6 Ins. Law Journal 95; *Union Mutual L. I. Co.* v. *McMillen*, 24 Ohio St. 67; *Catoir* v. *Am. Co.*, 33 N. J. Law 487; *Merserau* v. *Phœnix M. L. I. Co.*, 66 N. Y. 274.

In Bliss on Life Insurance (2d ed.), s. 298, it is said,—"An agent without authority to contract has authority to waive payment of the premium, and to deliver the policy, giving a credit for the amount, though the policy provides that no policy shall be binding till the premium is paid; and this, even though the policy provides that the agent has no power to waive any condition in it." As authority for this statement, the author cites in a note four cases, viz., *Boehen* v. *Williamsburgh Co.*, 35 N. Y. 131; *Sheldon* v. *Atlantic Co.*, 26 N. Y. 460; *Wood* v. *Poughkeepsie Co.*, 32 N. Y. 619; *Post* v. *Ætna Co.*, 43 Barbour 351. We have looked at the reports of these cases. In not one of them is there the slightest intimation that the policy contained any restriction upon the agent's power of waiver. On the contrary, in two opinions stress is laid upon the doctrine that the agent's apparent authority cannot be restricted by his secret instructions. Further comment on Mr. Bliss seems unnecessary; but we would just remark, that his statement, even if it had been supported by his authorities, would not cover the present case. The restrictive clause here is not confined to prohibiting the agent from waiving any condition in the policy. It also provides that no agent "shall make any contract binding the company  *   *   *   *."

There are other cases where a waiver has been held effective, notwithstanding a clause in the policy restricting the authority of agents. But those cases, so far as we have examined them, are all distinguishable from the present. They may be divided into three classes:—

1. Cases where the company, by their own dealings with the alleged insured, or by their knowledge and recognition of the agent's dealings, have impliedly assented, or authorized the agent to assent, to the varying of the terms and conditions of the policy. These cases do not apply here. It is claimed that Hodgdon had made agreements for delay in other cases. But it is not shown that his action in this respect was brought to the notice of the company during his agency; and hence there is no room to imply their approval. Any claim which Hodgdon made upon the company after leaving their service is immaterial unless it was acceded to, of which there is no evidence.

2. Cases where the alleged waiver was made by a general agent of the company. These decisions, even if correct, are inapplicable, because Hodgdon was not a general agent, and did not hold himself out as such.

3. Where the policy provides that there shall be no waiver or alteration by any agent unless such waiver shall be indorsed in writing on the policy, it has been held that a verbal waiver by the

agent is effectual.   But this decision, whether right or wrong, does not affect the present inquiry.   In that case the proviso does not prohibit the agent from waiving, but is regarded as merely direct-ing the way or manner in which the waiver shall be evidenced, and hence is not considered matter of substance essential to be strictly followed.   But the restrictive clause in the present policy is not a mere formal direction as to the mode of exercising an ad-mitted power.   It is an absolute and unqualified prohibition.

*Copeland* (with whom were *Dodge* and *Edgerly*), for the plaintiff.

I. The motion for nonsuit was not seasonably made.   Such a motion should have been made at the close of the plaintiff's testi-mony, and not after.   In this case the motion was made after all the evidence had been introduced on both sides.   This appears from the order in which the points appear in the case drawn.   The burden is upon the defendants to make it appear affirmatively that the mo-tion was seasonably made.   It does not "appear" to have been made in season, and "that which does not appear does not exist."   The case does not show when the plaintiff stopped.   A nonsuit will not be ordered upon evidence introduced by the defendant.   The plain-tiff has a right to have it weighed by the jury.   *Pillsbury* v. *Pills-bury*, 20 N. H. 90 ; *Rose* v. *Learned*, 14 Mass. 154 ; *Bowman* v. *Sanborn*, 25 N. H. 108 ; *Oakes* v. *Thornton*, 28 N. H. 44 ; *Prescott* v. *Hayes*, 43 N. H. 598 ; *McGregory* v. *Prescott*, 5 Cush. 67 ; *Page* v. *Parker*, 43 N. H. 363.

II. There was direct evidence of delivery of the policy, and the case shows that the receipt for premium was delivered with it.   The policy acknowledged payment of the premium.   It was a written ad-mission that the premium had been paid.   *Sheldon* v. *Atlantic Co.*, 26 N. Y. 460.   Whether the admission was conclusive or not, it was, at least, *prima facie*, and a nonsuit could not be ordered.   The cases cited by the defendants show that the receipt in the policy is evidence ; but he claims that it is not conclusive.   But in those cases it is expressly stated that the evidence was not received to render the policy originally void.   The acknowledgment may be explained, but not to defeat the policy *ab initio*.   *Hodgson* v. *Ma-rine Ins. Co.*, 5 Cranch 100 ; *Hemmenway* v. *Bradford*, 14 Mass. 121 ; *Providence Co.* v. *Fennell*, 49 Ill. 180 ; *N. Y. C. I. Co.* v. *Na-tional Ins. Co.*, 20 Barb. 468 ; 3 Kent Com. 260 ; *Boehen* v. *Ins. Co.*, 35 N. Y. 131 ; *Madison Ins. Co.* v. *Fellowes*, 1 Disney 217 ; *Fire Ins. Co.* v. *Cashow*, 41 Md. 59 ; *Teutonia L. I. Co.* v. *Mueller*, 77 Ill. 22 ; *Same* v. *Anderson*, 77 Ill. 384 ; *Troy Fire Ins. Co.* v. *Carpenter*, 4 Wis. 20 ; *Prince of Wales Ins. Co.* v. *Harding*, El. B. & E. 183 ; *Dalzell* v. *Mair*, 1 Camp. 532 ; *De Gaminde* v. *Pigou*, 4 Taun. 246 ; *Anderson* v. *Thornton*, 8 Exch. 425.

The evidence showing that the policy and receipt were delivered and came into the possession of the plaintiff, it was sufficient *prima*

*facie* evidence of title under them.   *Reddin* v. *Shute*, 1 Dane Ab. 575; Bliss on Life Insurance (2d ed.) 248; *Whitaker* v. *Salisbury*, 15 Pick. 534.   Possession of land, chattels, money, notes, bills, and contracts is *prima facie* evidence of title.   Possession of a deed by the grantees is presumptive evidence of a delivery.   *Canning* v. *Pinkham*, 1 N. H. 353.   Thus it follows, that the plaintiff having had possession, the fact of possession is evidence of a lawful delivery, and casts the burden upon the defendants to attack it.   The plaintiff submits that for the foregoing reasons a nonsuit should not have been ordered.

III.   The evidence showed that Hodgdon was agent.   There was no evidence that he had not all the power of a general agent.   In the absence of such evidence an agent is presumed to have full powers.   *Methuen Co.* v. *Hayes*, 33 Me. 169.   That notwithstanding the limitation in the policy pre-payment may be waived by a general agent, is sustained by the adjudged cases; and we repeat, that the presumption is that H. had all the powers of a general agent.   The assent or authority may be implied, and, like all other questions, it may be implied or inferred from the circumstances. It may be inferred from the previous dealings.   In this case the dealings with the defendants' agents, Butler, Merrill, and Hodgdon, were all competent evidence upon that point.   All either made, or offered to make, some deductions from premiums.   2 Kent Com. 614–615; 2 Gr. Ev., *s.* 65; 1 Hare & W. 398–404.   The evidence as to the usage of Hodgdon was competent on the question of authority.   *Baxter* v. *Massasoit Ins. Co.*, 13 Allen 320; *Kent* v. *Tyson*, 20 N. H. 125; *Wendell* v. *Abbott*, 45 N. H. 350–353.

IV.   The failure to deliver Hodgdon the premium note did not invalidate the policy.   The note was made by R. Brown, the assured, and left by him with A. H. Brown, by the direction of the defendants' agent.   The possession of A. H. B. was the possession of the defendants.   It was just where the defendants' agent directed it to be.   *Sheldon* v. *Ins. Co.*, 25 Conn. 207; *Mayo* v. *Pew*, 101 Mass. 555.

V.   The custom of the defendants to charge Hodgdon with the premiums at the time of sending policies was evidence tending to show his authority to give credit, make discounts, and accept payments as he pleased.   He was the debtor of the company for the premium.   He had both commissions and salary.   He was not bound to send to the defendants the specific money received by him from any policy.   Whatever he received during the month, so far as was necessary to pay him his salary, he received for himself.   He made payments on account in gross.   He could pay from the money received from policy-holders, or from other funds. Suppose, during a given month, he received money from ten policyholders; that his commission and salary amounted to all he received from three of them: he could lawfully retain for his own

use the amount received from those three; and, if he could lawfully retain it, he could lawfully loan or give the whole or any part to the assured. The doctrine contended for by the defendants would invalidate all the policies, both fire and life, where the agents had in whole or in part discounted their commissions to the assured. By charging the premium to the agent, the agent was thereby authorized to give credit: by the custom, the premium was treated as paid to the company: they could appropriate any sums due the agent for salary and commissions to its payment. *Sheldon* v. *Ins. Co.*, 25 Conn. 207; *Train* v. *H. P. Ins. Co.*, 62 N. Y. 598.

It is not contended that the company may not, notwithstanding the notice, authorize an agent to waive prepayment;—whether or not they have, as a question of proof, any fact or circumstance tending to show authority or acquiescence, is admissible. The notice does not change the law of evidence or the law of agency. An agent, who is authorized to waive conditions, may still do so; the company may still authorize him to do so; they may impliedly, by acquiescence, be held to have assented to his usage in doing so. That an agent authorized to deliver a policy is authorized to waive prepayment, is sustained by the following authorities: *Ins. Co.* v. *Colt*, 20 Wall. 560; *Marsh* v. *N. H. Ins. Co.*, 3 Bliss 351; *Sheldon* v. *Ins. Co.*, 26 N. Y. 460; *Boehen* v. *Ins. Co.*, 35 N. Y. 131; *Hodsdon* v. *Guardian Ins. Co.*, 97 Mass. 144; *Chickering* v. *Ins. Co.*, 116 Mass. 321; *Lycoming Co.* v. *Schollenberger*, 44 Pa. St. 259; *Heaton* v. *Manhattan Co.*, 7 R. I. 502; *Rix* v. *Mutual Ins. Co.*, 20 N. H. 198; *O'Reilly* v. *Co.*, 3 N. Y. (S. C.) 487; *Shear* v. *Phenix Co.*, 4 Hun 800; *Buckbee* v. *U. S. Co.*, 18 Barb. 541; *Helme* v. *Philadelphia Ins. Co.*, 61 Pa. St. 107; *Thompson* v. *St. Louis Co.*, 15 Mo. 279; *Mutual Co.* v. *Robertson*, 59 Ill. 123; *Mayer* v. *Mutual Ins. Co.*, 38 Iowa 304.

VI. The notice in the policy could not affect the plaintiff's rights in transactions before notice was given; there was no such notice in the transactions with Butler, none in the application made to Butler, no such notice in the policy procured through Butler, and none in the correspondence with Morrill. Having once had a policy issued by the defendants before he commenced negotiating with Hodgdon, he had a right, in the absence of notice, to suppose that the policy to be issued through Hodgdon would be similar in its conditions. The amount of premium was fixed and accepted as paid by Hodgdon before notice. The $50 was received and adjusted by Hodgdon, and agreed by him to be in full of the six months premium before notice. The policy was delivered unconditionally before, and whatever effect the notice in the policy may have had upon future transactions, it would have none upon those already past, prior at least to the delivery of the policy; and, including the delivery, the plaintiff had a right to presume that Hodgdon had all the authority he exercised, and giving notice then did not limit the effect of his acts already past.

FOSTER, J.   If the plaintiff's evidence is insufficient to warrant the jury in finding a verdict in his favor, and if the defendants' evidence does not supply the defect, and so all the evidence in the case is legally incompetent to sustain a verdict for the plaintiff, a motion for a nonsuit should be granted.   And in such a case it does not seem to be material whether the motion is made at the close of the plaintiff's case, or whether it is delayed till all the evidence is in.   *Pillsbury* v. *Pillsbury*, 20 N. H. 90; *Fletcher* v. *Thompson*, 55 N. H. 308; *Oakes* v. *Thornton*, 28 N. H. 44.   The motion for a nonsuit was seasonably made.

Did the plaintiff's evidence make out a *prima facie* case?   The contract on which it is claimed the defendants are liable to the plaintiff is one of life-insurance; and to ascertain what that contract was, the intention of the parties must govern.   *Robert* v. *N. E. Ins. Co.*, 2 Disney (Ohio) 106.   Whatever the contract may have been in relation to the first policy of September 10, 1872, and however fraudulent may have been the representations of Butler in regard to it, the plaintiff is to recover in this case, if at all, by the contract of December 31, 1874.   Previous to that time he had acquired no rights against the defendants under the last policy.   The negotiations with reference to it amounted simply to a proposal to take insurance,—not to a contract.   By signing the application, accepting the policy, and bringing a suit on it, the plaintiff, in the absence of fraud or imposition, must be held to have had notice of, to have understood, and to have agreed to the terms, limitations, and conditions contained in the application for insurance and in the policy.   *Grace* v. *Adams*, 100 Mass. 505.   He agreed, in consideration of the insurance by the company on the life of R. B., to pay the company an advance premium of $61.20 in cash, and a loan note of $30; and he also had notice of and agreed to this provision in the policy, " that the policy shall not take effect until the advance premium hereon shall have been paid during the lifetime of the person whose life is hereby insured."   And in still more emphatic language, the same condition is expressed in the application which he signed.   This was one of the essential parts of the contract.   *Davis* v. *Mass. Mut. L. Ins. Co.*, 13 Blatchf. 462.

But it is claimed that the plaintiff received a receipt from the company acknowledging the payment of the advance premium, and that the company are estopped by that receipt.   It does not appear, however, that the plaintiff was misled or could have been misled by this receipt, so far as the company were concerned.   He knew he had not done all that was required by the terms of the policy; that he had not performed his part of the contract; and he cannot now set up an estoppel against the company in his own favor, when he had full knowledge of all the facts relating to the transaction, and knew, as matter of fact, that he was not entitled to a receipt.   *Baker* v. *Ins. Co.*, 43 N. Y. 283; *Sheldon* v. *Atlantic*

*Co.*, 26 N. Y. 460 ; *Pitt* v. *Berkshire L. Ins. Co.*, 100 Mass. 500; *Bergson* v. *Builders' Ins. Co.*, 38 Cal. 541.

The arrangement with Hodgdon, by which the $50 paid on the old policy was to be transferred in payment of the first six months premium on the one in suit, does not bind the company. Hodgdon was acting, not in his individual capacity, but as the agent of the company. He might have agreed to pay the balance due out of his own pocket, and, with the assent of the company, made the plaintiff his debtor. But the plaintiff's testimony conclusively shows that it was an arrangement by which the company was to be bound. It was not an attempt to defer payment beyond a spec-- ified time, but it was an attempt to waive and avoid payment of the full amount due, in fraud of the company. Had Hodgdon any authority to compromise with policy-holders in this manner? We have found no case in which an agent's power has been extended to this point; and on principle we see no reason why it should be, in the absence of any authority or ratification by the principal. *Catoir* v. *Ins. Co.*, 33 N. Y. 487 ; *Hoffman* v. *Ins. Co.*, 92 U. S. 161; *Franklin L. Ins. Co.* v. *Sefton*, 53 Ind. 380 ; *Union Mut. L. Ins. Co.* v. *McMillen*, 24 Ohio State 67 ; *Merserau* v. *Phœnix M. L. Ins. Co.*, 66 N. Y. 274; *Davis* v. *Mass. Mut. L. Ins. Co.*, 13 Blatchf. 462 ; *How* v. *Union Mut. Ins. Co.*, 80 N. Y. 32. The plaintiff introduced no evidence tending to show that Hodgdon was a general agent of the company, or that he held himself out as such. But the policy provided that " no agent of the company shall make any contract binding the company, nor alter or change any condition of this pol- icy, nor waive forfeiture of this policy." Hodgdon did attempt to make a contract binding on the company to release the plaintiff from his obligation to pay the whole of the advance premium, and did thus attempt to alter and change one of the essential conditions of the policy. The plaintiff, therefore, having full and ample notice and knowledge of the restrictions on Hodgdon's authority in this respect, as an agent of the defendants, cannot now hold the company responsible for his unauthorized contract unless the com- pany has in some way ratified it.

In *Davis* v. *Mass. Mut. L. I. Co.*, cited above, the defendants be- ing the same as in this case, and the policy containing the same conditions and limitations, Judge *Shipman* says,—" It is not neces- sary, under the provisions of this application and policy, to con- sider any distinction between the powers of a general agent, by which term I mean an agent who is authorized to make contracts of life insurance, and the powers of a sub-agent who is employed 'to solicit applications for insurance, and under such employment to collect premiums on policies that were placed in his hands, and thereupon to deliver premium receipts and such policies to the assured,' and whose powers are coextensive with the business en- trusted to his care, because in my opinion the powers of any per- son who was an agent, and not an officer of the company, to vary

the terms of the contract which had been entered into between the company and Sweatland, had been taken away, and the prohibition of the exercise of such powers was known to Sweatland. The provisions alike of the application and of the policy declare that the policy will not take effect unless prepayment has been made.   This condition could have been waived by the company or its duly authorized agent, unless the agent has been prohibited from varying the terms of the policy, and that restriction of his powers had been brought home to the knowledge of the insured."

The evidence, introduced by the plaintiff to show Hodgdon's method or custom of doing his insurance business, was immaterial. Not showing that the company ever knew of or ratified his acts in the instances testified to, or that the terms of the policies were the same as those in the plaintiff's policy, it was not competent for the jury to find from such testimony that the company in this case were bound as having knowledge of Hodgdon's special arrangement with the plaintiff.   A principal cannot be held responsible for acts of his agent beyond the apparent scope of his authority, which he has never ratified, and of which he has never had any actual knowledge.   *Franklin Ins. Co.* v. *Sefton*, 53 Ind. 380; *Koelges* v. *Guard. L. Ins. Co.*, 2 Lans. 480; *Bouton* v. *Am. Mut. L. Ins. Co.*, 25 Conn. 542.

Nor is the defect in the plaintiff's case supplied by the defendants' testimony.   The fact, that the company charged the premium to Hodgdon when they issued the policy, being in accordance with a custom of business between the company and their agents, not being regarded by the company as a payment, and not being known to and understood by the plaintiff as a payment of his indebtedness to the company, cannot now be held to have had that effect.   As against the agent, it was not a debt due to the company until he received the money; if he never received the money and returned the policy, the premuim was credited to him on the company's books; and if he delivered the policy without receiving the premium, the policy by its terms was not to be enforced.   And there is no evidence that Hodgdon agreed with the plaintiff to become personally responsible to the company for the amount of his premium.   *Buffum* v. *Fayette M. F. I. Co.*, 3 Allen 360; *Hoyt* v. *Mutual Benefit L. I. Co.*, 98 Mass. 539; *Acey* v. *Fernie*, 7 Mee. & W. 151.

The note for $30, which was a part of the advance premium, was never delivered to the company.   It was made by R. B. and delivered to the plaintiff.   It did not, in any proper sense, come into the possession of the company.   The plaintiff could not accept it in behalf of the company.   He could not, for the company, pass on its proper execution.   The evidence at most only shows that the plaintiff was requested to carry the blank note to R. B., and after he had signed it to bring it back to Hodgdon.   But it was as much a part of the contract that the note should be delivered, as

that the cash part of the premium should be paid. The note, therefore, never having been legally delivered to the defendants, the plaintiff. has failed to perform his part of the contract in this respect. *Lewis* v. *Phœnix M. L. I. Co.*, 44 Conn. 72; *Markey* v. *Ins. Co.*, 118 Mass. 178.

All the evidence in the case not being competent to sustain a verdict in favor of the plaintiff, a nonsuit should have been ordered.

*Verdict set aside.*

Doe, C. J., Stanley, Bingham, Smith, and Clark, JJ., did not sit: Allen, J., concurred.